UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ESTATE ADMINISTRATIVE SERVICES, LLC, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LINDA MAY JOHNSON;<br><br>            Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY HONOLULU,  DOE DEFENDANTS 1-25,<br><br>            Defendants. | CIV. NO. 23-00127 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ESTATE ADMINISTRATIVE SERVICES, LLC, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LINDA MAY JOHNSON'S FIRST AMENDED COMPLAINT, FILED ON JUNE 29, 2023 (DKT. 24)**

On June 29, 2023, Plaintiff Estate Administrative Services, LLC, as Personal Representative of the Estate of Linda May Johnson ("Plaintiff") filed its First Amended Complaint for Damages ("First Amended Complaint"). [Dkt. no. 24.]  On July 12, 2023, Defendant City and County of Honolulu ("the City") filed a motion to dismiss the First Amended Complaint ("Motion"). [Dkt. no. 28.]  Plaintiff filed its memorandum in opposition to the Motion on September 15, 2023. [Dkt. no. 31.] On September 22, 2023, the City filed its reply. [Dkt. no. 32.] This matter came on for hearing on October 6, 2023 ("10/6 Hearing").  The City's Motion is hereby granted in part and denied in part for the reasons set forth below.

## BACKGROUND

The original complaint was filed in the State of Hawai`i First Circuit Court ("state court") on February 27, 2023, and the case was removed on March 8, 2023.  [Notice of Removal of Civil Action Under 28 U.S.C. § 1441(c), filed 3/8/23 (dkt. no. 1), Decl. of Counsel, Exh. A (Complaint for Damages).]

Plaintiff alleges Honolulu Police Department ("HPD") officers arrested Linda May Johnson ("Johnson") pursuant to HPD Policy Number 4.44 "because they determined that she had been cited or arrested for the same offense within the last twelve months."  [First Amended Complaint at ¶ 12.]  Johnson was arrested in Waikiki on February 14, 2022 at 3:15 a.m.  [Id. at ¶ 10.]  Johnson was transported to Kapolei Police Station.  [Id. at ¶ 13.]  The First Amended Complaint alleges that:

> at the time of LINDA MAY JOHNSON's arrest, the cell block at HPD's main station was under repair and renovation, and Acting Chief Rade Vanic directed that Central Receiving Division's functions be transferred to the Kalihi Police Station and the Kapolei Police Station for all persons arrested between Hawaii Kai and Chinatown [("Acting Chief Vanic's Directive")].  Pursuant to Acting Chief Vanic's directions, all arrestees who could post bail immediately would be booked and released from the Kalihi Police Station, and those who could not post bail immediately would be taken to the Kapolei Police Station where they would be processed and held until they posted bail, appeared in court, or were transferred to another facility.

[Id. at ¶ 14 (emphasis in original).]   The First Amended
Complaint also alleges:

> On February 14, 2022, HPD was aware that
> transporting arrestees to the Kapolei Police
> Station might cause serious problems for persons,
> like LINDA MAY JOHNSON, who would not have the
> resources to obtain shelter, mental health care,
> substance abuse treatment, or other essential
> services if and when they were released from
> custody in Kapolei.

[Id. at ¶ 15.]

Johnson was released at 8:00 a.m. from the
Kapolei Police Station without means of transportation,
resources, or assistance, and remained in the vicinity of
the Kapolei Police Station.   HPD Lieutenant Dalton Wong
("Lieutenant Wong") contacted Johnson's case worker, David
Fong ("Fong"), at 10:15 p.m. on February 14, 2022, and
informed Fong that Johnson had been arrested, taken to the
Kapolei Police Station, was unable to take care of herself,
and was experiencing paranoia and anxiety.   [Id. at ¶¶ 16-
18.]

On February 15, 2022 at 6:30 p.m., a civilian
named Thomas Smith ("Smith") arrived at the Kapolei Police
Station and was approached by Johnson, who asked for water
and emergency assistance.   Smith got water from his car,
and then went inside the police station to find an HPD
officer to assist Johnson.   [Id. at ¶¶ 19-20.]   "Smith

spoke to HPD Officer Sandy Cesar [('Officer Cesar')], who was the officer at the front desk, and told Officer Cesar that there was a woman outside who needed emergency assistance, but instead of going outside to look for LINDA MAY JOHNSON, Officer Cesar walked away and retreated further into the back of the station."  [Id. at ¶ 21.]

Shortly thereafter, at 6:40 p.m., HPD officers released Michael Armstrong ("Armstrong") who, in 2007, was acquitted of felony charges by reason of insanity and had a history of mental illness.  See id. at ¶¶ 30, 35, 38.  The First Amended Complaint alleges that "the HPD officers who released Michael Armstrong knew or should have known of his extensive mental health history and that he posed an immediate risk of harm to other persons, including LINDA MAY JOHNSON."  [Id. at ¶ 41.]  Upon Armstrong's release, Armstrong allegedly attacked and caused Johnson's death "upon the Kapolei Police Station premises."  [Id. at ¶ 39.]

Plaintiff alleges a negligence claim ("Count I") and a 42 U.S.C. § 1983 claim for the violation of Johnson's civil rights under the Fourteenth Amendment of the United States Constitution ("Count II").  [Id. at ¶¶ 47-57.]

In the Motion, the City asks this Court to dismiss both claims with prejudice.  [Motion, Mem. in Supp. at 23.]

4

**DISCUSSION**

I.   **Negligence**

The City argues Ruf v. Honolulu Police Department, 89 Hawai`i 315, 972 P.2d 1081 (1999), bars the negligence claim because the Hawai`i Supreme Court in that case held that "'the duty provided by the special relationship in Restatement (Second) of Torts § 319 is not extended to the general public when the police department releases a criminal from custody . . ." [Motion, Mem. in Supp. at 20-21 (quoting Maho Wada v. Aloha King, LLC 154 F. Supp. 3d 981, 998 (D. Haw. 2015) (citing Ruf v. Honolulu Police Dept., 89 Haw. 315, 972 P.2d 1081, 1095-96 (Haw. 1999))).]  The City also argues no officer is alleged to have acted with malice, and "no officer is plausibly alleged to have known of the particular dangers Armstrong posed to Johnson and created and/or exacerbated that specific danger he posed to her." [Id. at 19.]

The City is correct: Plaintiff does not sufficiently allege the City owed Johnson a duty.  Plaintiff also fails to allege any officer acted with actual malice.  The negligence claim must be dismissed on this basis.

> Pursuant to Hawaii law, a plaintiff bringing a negligence claim must allege the following four elements:
>
> (1)  a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the

5

> protection of others against unreasonable
> risks;
>
> (2)  a failure on the actor's part to
> conform to the standard required;
>
> (3)  a reasonable close casual connection
> between the conduct and the resulting
> injury; and,
>
> (4)  actual loss or damage resulting to the
> interests of another.
>
> Ono v. Applegate, 62 Haw. 131, 612 P.2d 533, 538–
> 39 (1980).

Dural v. City & Cnty. of Honolulu, Civ. No. 21-00461 HG-WRP,

2023 WL 2083559, at *15 (D. Hawai`i Feb. 17, 2023).

### A.    **Duty**

> In order to state a negligence claim against
> Defendant City and County of Honolulu, Plaintiff
> must specify the duty of care and describe the
> failure of an individual to conform to that duty.
> Plaintiff must demonstrate how the Defendant City
> and County of Honolulu is liable for the failure
> to conform by that individual.  There also must
> be sufficient allegations to demonstrate how the
> failure caused Plaintiff harm.

Id.  Plaintiff alleges the City owed Johnson "a duty to act

reasonably and to not place her in any more danger as a result

of having arrested her and taken her into custody" and "a duty

to ensure that its premises were safe from known dangers or

dangers created by their own conduct."  [First Amended Complaint

at ¶¶ 48-49.]  However, Plaintiff fails to allege a duty owed to

Johnson under either theory.

Beginning with a duty stemming from premises liability,

> The law with respect to a landowner's liability for the criminal acts of third parties is clear in Hawai`i.  This court has generally declined to impose a duty on landowners to protect against the criminal acts of a third party, inasmuch as, "under ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk."  Doe v. Grosvenor Properties (Hawaii) Ltd., 73 Haw. 158, 162, 829 P.2d 512, 515 (1992).  However, when there is a "special relationship" between a landowner and someone on its property, the landowner has a duty to protect the person from the criminal acts of third parties if those criminal acts are "reasonably foreseeable."  Id. at 163–65, 829 P.2d at 515–16; Maguire [v. Hilton Hotels Corp.,] 79 Hawai`i [110,] 113–15, 899 P.2d [393,] 396–98 [(1995)].  One such "special relationship" between parties is that of the business visitor, one who "is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."  Grosvenor Properties, 73 Haw. at 164, 829 P.2d at 515–16 (citing Restatement (Second) of Torts § 332 (1965)).

Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai`i 385, 392, 191 P.3d 1062, 1069 (2008).  A duty does not exist under a business visitor relationship because Johnson was an arrestee, and did not visit the Kapolei Police Station for business.  See First Amended Complaint at ¶¶ 12-13.

Further, a duty to Johnson did not exist under any other "special relationship."

7

In determining whether such a relationship exists, this court looks to section 314A of the Restatement (Second) of Torts, which sets forth a non-exclusive list of "special relationships" upon which a court may find a duty to protect. Section 314A provides:

> (1)  A common carrier is under a duty to its passengers to take reasonable action
>
> > (a)  to protect them against unreasonable risk of physical harm, and
> >
> > (b)  to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2)  An innkeeper is under a similar duty to his [or her] guests.
>
> (3)  A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
>
> (4)  One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his [or her] normal opportunities for protection is under a similar duty to the other.

Maguire, 79 Hawai`i at 113, 899 P.2d at 396 (alterations in Maguire) (emphasis and some citations omitted).  In addition, other special relationships may exist.  "Whether a person owes another a duty reasonably to protect the other from foreseeable harm by a third person depends upon whether the circumstances warrant the imposition of such a duty."  Doe Parents No. 1 v.

State, Dep't of Educ., 100 Hawai`i 34, 71, 58 P.3d 545, 582
(2002).

     The City, in its operation of the Kapolei Police
Station, is neither a common carrier nor an innkeeper.  Further,
the Hawai`i Supreme Court has not adopted the "public invitee"
relationship.  See Maguire, 79 Hawai`i at 113, 899 P.2d at 396.
This leaves the fourth category of special relationship – the
increased danger theory – as well as a more amorphous duty that
may exist when the circumstances warrant, as the remaining
possible bases of a duty under a special relationship.

     Hawai`i courts have not expressly decided whether a
duty exists when police increase the risk of harm to someone
released from custody by releasing someone else from custody.
Where Hawai`i courts have not expressly decided an issue, this
Court predicts how the Hawai`i Supreme Court would rule.  See
Gallagher v. Maternitywise Int'l, LLC, CIV. NO. 18-00364 LEK-
KJM, 2022 WL 16574202, at *3 (D. Hawai`i Nov. 1, 2022) (quoting
Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir.
2011)).

     While Ruf did not expressly decide the issue, this
Court reads Ruf as indicating that the Hawai`i Supreme Court
would hold that a police department does not have a duty to
protect a member of the public who had previously been in
custody from someone the police department released from custody

9

more than a day later.  See 89 Hawai`i 315, 972 P.2d 1081.  Ruf
held the duty provided by the special relationship in
Restatement (Second) of Torts § 319 is not extended to the
public when a police department releases a detainee from
custody.  Id. at 329-30, 972 P.2d at 1095-96; see also Wada v.
Aloha King, LLC, 154 F. Supp. 3d 981, 998 (D. Hawai`i 2015)
(discussing Ruf).  Johnson was released at approximately 8:00
a.m. on February 14, 2022, more than a day before Armstrong was
released on February 15, 2022 around 6:40 p.m.  See First
Amended Complaint at ¶¶ 16, 38.  At the time of Armstrong's
release, Johnson was no longer in custody – she was a member of
the public.  This would make Ruf's holding appear directly
applicable to Johnson at that time: HPD owed Johnson no duty as
a member of the public to protect her when it released an
arrestee from custody.

     The reasoning in Ruf indicates that HPD did not owe
Johnson a duty to protect her from an arrestee who was released
more than a day after Johnson was released.  In Ruf, the Hawai`i
Supreme Court emphasized its concern that imposing a duty based
on negligent release of an arrestee would incentivize police to
unnecessarily prolong detentions, thus impacting the liberty
interest of detainees.  89 Hawai`i at 327, 972 P.2d at 1093.
The Hawai`i Supreme Court stated:

> the protection of constitutional rights is of the
> utmost public importance, and, therefore, that
> any tendency to chill those rights is highly
> relevant to an analysis of whether the creation
> of a new duty in tort comports with the public
> policy of the state.  Moreover, the potential
> chilling effect of the duty proposed by the
> plaintiffs in the present matter is apparent and
> undeniable.  Ensuring that arrestees are not
> subjected to unnecessary detention is at least as
> important to this state's public policy as the
> ability of its prosecutors and judicial officers
> freely to exercise their discretion, see Hulsman
> [v. Hemmeter Dev. Corp., 65 Haw 58, 647 P.2d 713
> (1982)], and to ensure that persons examined by
> court-appointed psychiatrists are not
> unnecessarily institutionalized.  See [Seibel v.]
> Kemble, [63 Haw. 516, 631 P.2d 173 (1981)].

Id. at 329, 972 P.2d at 1095.  Although it explicitly did not

decide if it "might at some future time recognize a 'special

relationship' between the tortfeasor and police in some

context," such as through an increased danger theory, the

Hawai`i Supreme Court explicitly did not recognize this duty in

Ruf.  Id.

This Court is also unaware of any Hawai`i caselaw

recognizing that a police department owes a duty stemming from

taking an unhoused individual into custody and by releasing him

or her, isolating that individual in a new location.  If such a

duty exists, Plaintiff has not alleged any facts supporting that

the Kapolei Police Station, as opposed to HPD's main station,

posed more of a danger to Johnson.  See generally First Amended

Complaint at ¶¶ 13-16.

11

This Court predicts, based on Ruf, that the Hawai`i Supreme Court would hold that HPD did not owe Johnson a duty based on a special relationship stemming from its release of Armstrong.  Because the Court finds that the City did not owe Johnson a duty, Plaintiff cannot state a plausible negligence claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

**B.**   **Malice**

Additionally, even if a duty existed, Plaintiff has not sufficiently alleged any HPD officer or City representative acted with malice.

> "Under Hawaii law, it is well established that a nonjudicial government official performing a public duty enjoys the protection of a qualified privilege." Kealoha v. Hawaii, 2006 WL 2052331, at *5 (D. Haw. July 20, 2006) (citing Towse v. Hawaii, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982), and Medeiros v. Kondo, 55 Haw. 499, 522 P.2d 1269, 1272 (1974)); see also, e.g., Begley v. Cty. of Kauai, 2018 WL 3638083, at *6 (D. Haw. July 31, 2018) (reiterating and explaining the doctrine).
>
> But this protection is not absolute—the state official effectively waives a qualified privilege if the "official in exercising his authority is motivated by malice, and not by an otherwise proper purpose." Medeiros, 55 Haw. at 500-01, 503, 522 P.2d at 1270-71. And so, "[f]or a tort action to lie against a nonjudicial

12

government official, the injured party must
**allege** and demonstrate by clear and convincing
proof that the official was motivated by malice
and not by an otherwise proper purpose."
Edenfield v. Estate of Willets, 2006 WL 1041724,
at *12 (D. Haw. Apr. 14, 2006) (citing Towse, 64
Haw. at 631-33, 647 P.2d at 702-03, and Medeiros,
55 Haw. at 504-05, 522 P.2d at 1272)) (emphasis
added).

In this context, an "actual malice" test
applies for state law claims other than
defamation. See, e.g., Bartolome v. Kashimoto,
2009 WL 1956278, at *1 (D. Haw. June 26, 2009)
(citing cases). Under that test, "malicious or
improper purpose" is defined in "its ordinary and
usual sense." Awakuni v. Awana, 115 Haw. 126,
141, 165 P.3d 1027, 1042 (2007). Awakuni
utilized Black's Law Dictionary definitions of
"maliciousness" and "malice": (1) "substantially
certain to cause injury and without just cause or
excuse"; (2) "the intent, without justification
or excuse, to commit a wrongful act, reckless
disregard of the law or of a person's legal
rights; and (3) "ill will[,] wickedness of
heart." Id. (citations and editorial marks
omitted). And whether an official is **motivated**
by malice is a subjective test. See, e.g.,
Edenfield, 2006 WL 1041724, at *13. "Although
proving subjective motivation by clear and
convincing evidence may be a difficult standard
. . . to meet, that is the burden that the Hawaii
Supreme Court has adopted in its effort to
balance competing interests." Id.

Cornel v. Hawai`i, Civ. No. 19-00236 JMS-RT, 2020 WL 3271934, at

*4 (D. Hawai`i June 17, 2020) (alterations and emphases in

Cornel).

No HPD officer is sufficiently alleged to have acted

with malice toward Johnson.  Importantly, no HPD officer is

alleged to have known that Johnson was still in the vicinity of

the Kapolei Police Station at the time of Armstrong's release. There are only two allegations which are potentially relevant to HPD's knowledge of Johnson's whereabouts at the time of Armstrong's release: (1) Lieutenant Wong contacted Johnson's social worker Fong on February 14, 2022, stating that Johnson had been arrested and was taken to Kapolei Police Station, that she was unable to care for herself, and was suffering from paranoia and anxiety; [First Amended Complaint at ¶ 18;] and (2) that a bystander Smith approached Officer Cesar at the front desk and told her "there was a woman outside who needed emergency assistance" and Officer Cesar "retreated further into the back of the station[,]" [id. at ¶ 21].

       As to Fong being contacted, there is no allegation that Lieutenant Wong knew Johnson was still near the Kapolei Police Station at the time of Armstrong's release.  Regarding Officer Cesar's notification, there is no indication that Officer Cesar knew about Johnson, or knew this unidentified woman was Johnson.  Therefore, it cannot be said that any officer was motivated by malice regarding Johnson.  It is not alleged any officer was aware Johnson continued to be on the premises, much less that any officer's actions toward Johnson were "substantially certain to cause injury and without just cause or excuse."  See Awakuni, 115 Hawai`i at 141, 165 P.3d at 1042 (brackets, citation, and quotation marks omitted).

14

Therefore, malice is not sufficiently alleged, and the qualified privilege would shield the City from suit.  See Cornel, 2020 WL 3271934, at *4.

Count I is dismissed with prejudice because it is clear that Count I cannot be saved by amendment.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation and quotation marks omitted)).  In addition to failing to allege duty, Plaintiff fails to sufficiently allege malice.  This Court previously informed Plaintiff that, if the negligence claim could proceed, actual malice needed to be alleged.  See Minute Order - EO: Court Order Granting in Part and Denying in Part the City's Motion to Dismiss, filed 5/30/23 (dkt. no. 23) ("5/30 EO"), at PageID.146 (discussing qualified or conditional privilege); see also, e.g., Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009), as amended (Feb. 10, 2009) (stating the failure to cure defects identified in the dismissal of a prior version of the complaint "is a strong indication that the plaintiffs have no additional facts to plead" (citation and internal quotation marks omitted)).  The City's Motion is therefore granted as to Count I.

15

## II.  Count II: 42 U.S.C. § 1983 Claim

The City raises two primary arguments regarding Plaintiff's claim under § 1983: (1) Plaintiff has not adequately alleged liability under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); and (2) that the underlying constitutional violation is not adequately plead.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (quotation marks and citation omitted).

> The Supreme Court in Monell held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom. 436 U.S. at 694, 98 S. Ct. 2018. "[A] municipality cannot be held liable **solely** because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691, 98 S. Ct. 2018.  The custom or policy must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Castro [v. Cnty. of Los Angeles], 833 F.3d [1060,] 1075 [(9th Cir. 2016) (en banc)] (ellipsis in original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).

Id. at 1153 (emphasis and some alterations in Benavidez).

   A.   **Constitutional Deprivation**

        Plaintiff alleges the City "violated the right of
bodily integrity guaranteed . . . by the Fourteenth Amendment to
the United States Constitution . . . ." [First Amended
Complaint at ¶ 55.]

        The Due Process Clause is a limitation on
        state action and is not a "guarantee of certain
        minimal levels of safety and security."
        [DeShaney v. Winnebago Cnty. Dep't of Soc.
        Servs., 489 U.S. 189,] 195, 109 S. Ct. 998
        [(1989)].  Simply failing to prevent acts of a
        private party is insufficient to establish
        liability.  See Patel v. Kent Sch. Dist., 648
        F.3d 965, 971 (9th Cir. 2011).  "The general rule
        is that a state is not liable for its omissions"
        and the Due Process Clause does not "impose a
        duty on the state to protect individuals from
        third parties."  Id. (alterations omitted) (first
        quoting Munger v. City of Glasgow Police Dep't,
        227 F.3d 1082, 1086 (9th Cir. 2000), then quoting
        Morgan v. Gonzales, 495 F.3d 1084, 1093 (9th Cir.
        2007)).

        There are two exceptions to this general
        rule.  First, a special relationship between the
        plaintiff and the state may give rise to a
        constitutional duty to protect.  See DeShaney,
        489 U.S. at 198-202, 109 S. Ct. 998.  Second, the
        state may be constitutionally required to protect
        a plaintiff that it "affirmatively places . . .
        in danger by acting with 'deliberate
        indifference' to a 'known or obvious danger.'"
        Patel, 648 F.3d at 971-72 (quoting L.W. v.
        Grubbs, 92 F.3d 894, 900 (9th Cir. 1996)); see
        also Kennedy v. City of Ridgefield, 439 F.3d
        1055, 1063 (9th Cir. 2006) (holding that the
        officer "affirmatively created a danger to [the
        plaintiff] she otherwise would not have faced" by
        informing her assailant of the accusations her
        family had made against him before they "had the

> opportunity to protect themselves from his
> violent response to the news . . . [thus]
> creat[ing] 'an opportunity for [him] to assault
> [the plaintiff] that otherwise would not have
> existed'" (alterations omitted) (quoting L.W. v.
> Grubbs, 974 F.2d 119, 121 (9th Cir. 1992))).

Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019)

(some alterations in Martinez) (footnote omitted).

> The state-created-danger exception applies when
>
> government employees "affirmatively place[] the
> plaintiff in a position of danger, that is, where
> [their] action[s] create[] or expose[] an
> individual to a danger which he or she would not
> have otherwise faced." Kennedy, 439 F.3d at 1061
> (citing DeShaney, 489 U.S. at 197, 109 S. Ct.
> 998) (internal quotation marks omitted). The
> affirmative act must create an actual,
> particularized danger, id. at 1063, and the
> ultimate injury to the plaintiffs must be
> foreseeable, Lawrence v. United States, 340 F.3d
> 952, 957 (9th Cir. 2003). The employees must
> have also acted with "deliberate indifference" to
> a "known or obvious danger." Patel v. Kent Sch.
> Dist., 648 F.3d 965, 974 (9th Cir. 2011)
> (citation and internal quotation marks omitted).

Hernandez v. City of San Jose, 897 F.3d 1125, 1133 (9th

Cir. 2018) (alterations in Hernandez).

> Plaintiff has not adequately alleged a violation of

the Fourteenth Amendment because Plaintiff has not adequately

alleged the state-created danger exception: Plaintiff has not

alleged facts sufficient to demonstrate deliberate indifference.

The First Amended Complaint does not allege that any policymaker

was aware that transporting arrestees to Kapolei could result in

a violation of their right to bodily security. See First

18

Amended Complaint at ¶ 15.  The First Amended Complaint also does not allege any HPD officer was aware that transporting Johnson to Kapolei could expose her to the danger of a private actor violating her right to bodily security, such as the danger of being beaten or death.  Further, Plaintiff does not allege any officer was both aware that Johnson was vulnerable and still on the premises, and aware that Armstrong was dangerous to Johnson at the time Armstrong was released.  See id. at ¶¶ 18-21, 41-43; supra Discussion § I.B.  Therefore, Plaintiff does not allege that any HPD officer recognized that Johnson would be exposed to a risk of bodily injury, and that any HPD officer intended to expose Johnson to this risk without regard to the consequences.  See Patel, 648 F.3d at 974-76.  Therefore, deliberate indifference by any HPD officer is not adequately alleged.[1]

The City also argues the Complaint fails to meet the "reinvigorated" Due Process test in Dobbs v. Jackson Women's

---

[1] Because deliberate indifference is not adequately alleged, the Court will not address the City's argument that any substantive due process claim based on bodily integrity requires that the requisite State officials' conduct "shock the conscience."  [Motion, Mem. in Supp. at 17.]  However, the Court notes the Ninth Circuit's explication of the deliberate indifference standard in Kennedy v. City of Ridgefield, in which the Ninth Circuit explained that no shock-the-conscience requirement has been added to the deliberate indifference requirement as it would inflame rather than elucidate analysis. 439 F.3d 1055, 1064-65 (9th Cir. 2006).

Health Organization, 142 S. Ct. 2228, 2247-48 (2022).  [Motion,
Mem. in Supp. at 16-17.]  This argument fails.  The City does
not cite Ninth Circuit caselaw supporting its position, but only
cites a case from the Fifth Circuit, Fisher v. Moore, 62 F.4th
912, 917-18 (5th Cir. 2023).[2]  See Motion, Mem. in Supp. at 17.
Further, this Court is not aware of any Ninth Circuit caselaw
supporting City's argument.  Given the lack of binding caselaw
cited, and Plaintiff's citation to a great number of binding
cases upholding a right to bodily integrity through the state-
created-danger exception, the Court rejects the City's argument.
See Mem. in Opp. at 11-15.

>    **B.   *Monell* Liability**

         The City argues that Plaintiff has not adequately
alleged liability under Monell because Plaintiff has not
adequately alleged: (1) a policy or custom; (2) the underlying
constitutional violation; (3) deliberate indifference; and
(4) that the policy or custom was the moving force of the
constitutional violation.  Here, Plaintiff alleges the City is
liable based on two official policies:  HPD Policy 4.44 and
Acting Chief Vanic's Directive.  [Mem. in Opp. at 19.]

              To establish Monell liability through a "policy,"
         Plaintiff would ultimately need to prove—and thus

---

         [2] Fisher is nonbinding, and the version of the opinion cited
by Plaintiff was withdrawn and superseded, although the
proposition remained in the subsequent version of the opinion.
See Fisher v. Moore, 73 F.4th 367, 372-73 (5th Cir. 2023).

> support with sufficient allegations at the motion
> to dismiss stage—that "(1) he was deprived of a
> constitutional right; (2) the municipality had a
> policy; (3) the policy amounted to deliberate
> indifference to [his] constitutional right; and
> (4) the policy was the moving force behind the
> constitutional violation." Lockett v. County of
> Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020).
> "For a policy to be the moving force behind the
> deprivation of a constitutional right, the
> identified deficiency in the policy must be
> closely related to the ultimate injury" and "the
> [ultimate] injury would have been avoided had
> proper policies been implemented." Long v.
> County of Los Angeles, 442 F.3d 1178, 1190 (9th
> Cir. 2006) (citations and quotation marks
> omitted).

Powell v. Hawaii, CIV. NO. 23-00005 JAO-RT, 2023 WL 4405638, at

*7 (D. Hawaiʻi July 7, 2023) (alterations in Powell).  Because

the underlying constitutional violation has already been

addressed *supra* Discussion § II.A, the remaining elements are

analyzed in turn.

### 1.  **Policy**

Plaintiff adequately alleges facts sufficient to

demonstrate that HPD Policy Number 4.44 and Vanic's Directive

could be official policies.  To sufficiently plead a policy for

purposes of Monell liability:

> Plaintiff need not "exhaustively detail the
> County's alleged policies at the pleadings, but
> he must plausibly illustrate that policies or
> customs of some sort exist." Jones v. Cnty. of
> San Mateo, 2021 WL 6049913, at *4 (N.D. Cal.
> Dec. 21, 2021).  "[P]laintiff must plead what
> [he] knows—whether it is a number of incidents or
> some other evidence—that renders plausible [his]
> conclusion that there is a policy, custom, or

> practice in place."  <u>Griego v. City of</u>
> <u>Albuquerque</u>, 100 F. Supp. 3d 1192, 1216 (D.N.M.
> 2015).  "The expectation is that [Plaintiff] must
> tell the Court at the outset, in the complaint,
> (i) why [he] thinks a policy exists—alleging
> specific facts; and (ii) what [he] thinks the
> policy is.  The Court will then decide whether
> (i) plausibly suggests (ii)."  <u>Id.</u> . . .

<u>Powell</u>, 2023 WL 4405638, at *7 (some alterations in <u>Powell</u>).

Plaintiff has pled specific facts suggesting why Plaintiff think

the policy exists, and what the policy is.  <u>See</u> First Amended

Complaint at ¶¶ 12, 14.

### 2.  <u>Deliberate Indifference</u>

Plaintiff fails to allege the City had a policy that

"amount[ed] to deliberate indifference to [Johnson's]

constitutional right" of bodily integrity.  <u>See</u> <u>Gordon v. Cnty.</u>

<u>of Orange</u>, 6 F.4th 961, 973 (9th Cir. 2021).  "[M]ere negligence

— or even gross negligence — is not enough for deliberate

indifference."  <u>Patel</u>, 648 F.3d at 976 (citation omitted).

> the standard we apply is even higher than gross
> negligence — deliberate indifference requires a
> culpable mental state.  [<u>Grubbs</u>, 92 F.3d at 898-
> 900.]  The state actor must "recognize[] [an]
> unreasonable risk and actually intend[] to expose
> the plaintiff to such risks without regard to the
> consequences to the plaintiff."  <u>Id.</u> at 899
> (internal quotation omitted).  In other words,
> the defendant "knows that something **is** going to
> happen but ignores the risk and exposes [the
> plaintiff] to it."  <u>Id.</u> at 900.

<u>Id.</u> at 974 (some alterations in <u>Patel</u>).  A municipality is

deliberately indifferent when the need for a different action

"is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  City of Canton v. Harris, 489 U.S. 378, 390 (1989).

As stated supra § II.A, Plaintiff does not allege that any policymaker was aware that transporting arrestees to Kapolei could result in a violation of the arrestees' right to bodily security.  See First Amended Complaint at ¶ 15.  While Plaintiff has pled that HPD was aware that transporting arrestees to Kapolei could cause problems for those persons, such as being unable to obtain shelter, mental health care, or substance abuse treatment, there are no allegations that HPD officers or other officials were aware such a policy could lead to bodily injury. See id.  Nor does this Court find it so obvious that the City's alleged policy of bringing arrestees to the Kapolei Police Station as opposed to HPD's main station would result in bodily harm to the arrestees.  See id. at ¶ 14.

### 3.  **Moving Force**

Plaintiff fails to allege the "the policy [wa]s the moving force behind the constitutional violation."  See Gordon, 6 F.4th at 973 (citation and quotation marks omitted).  To establish that the policy was the moving force behind the constitutional violation, "plaintiff must demonstrate that

23

defendants' policy was 'closely related to the ultimate injury.'"  Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992) (some citations omitted) (quoting City of Canton, 489 U.S. at 391, 109 S. Ct. at 1206).

> The identified deficiency in the policy must be closely related to the injury in order for a policy to be a moving force behind the deprivation of a constitutional right.  Long, 442 F.3d at 1190.  A plaintiff must establish that the injury would have been avoided if the proper policies had been implemented.  Id.

Taylor v. City & Cnty. of Honolulu, Civ. No. 22-00013 HG-KJM, 2023 WL 2753162, at *15 (D. Hawai`i Mar. 31, 2023).

Here, it cannot be said that HPD's policies of arresting someone who had been cited or arrested for the same offense in the last twelve months and of bringing arrestees who could not post bail to the Kapolei Police Station for processing **caused** Johnson's injury.  Armstrong caused Johnson's injury.

Based on the foregoing, Count II must be dismissed. This Court previously stated: "Plaintiff fails to allege the City had a policy that 'amount[ed] to deliberate indifference to [Johnson's] constitutional right' and 'the policy [wa]s the moving force behind the constitutional violation.'"  See 5/30 EO at PageID.147 (alteration in 5/30 EO) (quoting Gordon v. Cnty. of Orange, 6 F.4th 961, 973 (9th Cir. 2021)).  Plaintiff still fails to allege deliberate indifference and that the policy was the moving force behind the constitutional violation.  However,

because Plaintiff could possibly cure the defects identified in this order, the dismissal of Count II is without prejudice.

## III. <u>Duplicative Claims & Emotional Distress</u>

In the First Amended Complaint, Plaintiff alleges: "As a direct and proximate result of the foregoing LINDA MAY JOHNSON and the members of her extended family have suffered great mental anguish, suffering, pain, and anger." [First Amended Complaint at ¶ 45.] The City argues that emotional distress damages by family members are not recoverable in this action. [Motion, Mem. in Supp. at 23.] In a survival action, the estate can only bring causes of action that the decedent had at the time of her death, as opposed to a wrongful death action brought by the family members themselves. See Greene v. Texeira, 54 Haw. 231, 235, 505 P.2d 1169, 1172 (1973) (discussing HRS § 663-7). Plaintiff also conceded that a claim for emotional distress damages on behalf of family members should be dismissed at the 10/6 Hearing. Accordingly, in the instant case, Plaintiff may not recover emotional distress damages on behalf of Johnson's family members.

The City also argues the Doe Defendants should not be sued in their official capacities because claims against them in in their official capacities are duplicative of Plaintiff's claims against the City. [Motion, Mem. in Supp. at 18.] "The Supreme Court noted decades ago that '[t]here is no longer a

25

need to bring official-capacity actions against local government officials, for under <u>Monell</u>, . . . local government units can be sued directly for damages and injunctive or declaratory relief.'" <u>Long v. Yomes</u>, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, at *3 (D. Hawai`i Sept. 20, 2011) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)).  Moreover, at the 10/6 Hearing, Plaintiff conceded that the claim against the Doe Defendants in their official capacities should be dismissed. Accordingly, the City's Motion is granted insofar as Plaintiff's claims against the Doe Defendants, in their official capacities are dismissed with prejudice.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the City's Motion is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED insofar as: Count I and Plaintiff's claims against the Doe Defendants in their official capacities are DISMISSED WITH PREJUDICE; this Court concludes that Plaintiff cannot recover the emotional distress damages on behalf of Johnson's family members; and Count II is DISMISSED.  The Motion is DENIED insofar as the dismissal of Count II is WITHOUT PREJUDICE.

Plaintiff is GRANTED leave to file a second amended complaint to cure the defects identified in this Order.  If Plaintiff chooses to do so, Plaintiff must file its second

amended complaint by **December 8, 2023,** and the second amended complaint must comply with the rulings in this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 8, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ESTATE ADMINSTRATIVE SERVICES, LLC, ETC. VS. CITY AND COUNTY OF HONOLULU, ET AL; CV 23-00127 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ESTATE ADMINISTRATIVE SERVICES, LLC, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LINDA MAY JOHNSON'S FIRST AMENDED COMPLAINT, FILED ON JUNE 29, 2023 (DKT. 24)**